IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BEVERLY D.F., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-1256-STE |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 18-31). On review, the Appeals Council

denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner for purposes of this appeal.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 31, 2020 the alleged onset date. (TR. 20). At step two, the ALJ determined Plaintiff suffered from the following severe impairments: rheumatoid arthritis; fibromyalgia; sciatica; hypertension; incomplete right bundle branch block; mitral valve insufficiency; history of tachycardia; carpal tunnel syndrome; osteoarthritis of the bilateral hands; and obesity. (TR. 21). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 23).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except she is capable of occasional climbing. She can do no crawling. She can frequently stoop, kneel, and crouch. She is able to frequently reach, handle, and finger, bilaterally.

(TR. 24-25).

At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a scale operator and general clerk. (TR. 30). Thus, at step four, the ALJ concluded that Plaintiff was not disabled based on her ability to perform those jobs. (TR. 30).

**III.   ISSUE PRESENTED**

On appeal, Plaintiff alleges error in the ALJ's consideration of her subjective allegations. (ECF Nos. 14:8-13, 20:1-2).

**IV.   STANDARD OF REVIEW**

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**V.   NO ERROR IN THE ALJ'S EVALUATION OF PLAINTIFF'S SUBJECTIVE ALLEGATIONS**

Plaintiff alleges that the ALJ erred in considering her subjective allegations and the consistency of her statements regarding her ability to walk and use her hands. The Court disagrees.

### A. ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to evaluate a claimant's subjective allegations. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At this second step, the ALJ will examine the objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;
- The location, duration, frequency, and intensity of pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;
- The type, dosage, effectiveness, and side effects of any medication;
- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and
- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.* at *9.

### B. Plaintiff's Subjective Allegations

Plaintiff appears to challenge the ALJ's evaluation of her subjective allegations regarding her abilities to walk and use her hands. (ECF No. 14:10-11). Thus, the Court's focus will be Plaintiff's subjective allegations regarding the same.

At the administrative hearing, Plaintiff testified that her most disabling condition was her rheumatoid arthritis, which caused her to have trouble walking and balancing. (TR. 98). Plaintiff testified that walking a slight incline "hurt" and she suffered pain in her lower back, specifically sciatic nerve pain, which "shoots down [her] leg" and causes her difficulty standing. (TR. 99). Plaintiff testified that she was able to walk around the block three times, but she "fe[lt] like [she] [didn't] walk normal or straight," that she "sway[ed] a little." (TR. 100). Plaintiff stated that at times, her knee "pops," causing her sharp pain and requiring her to sit down. (TR. 104).

Plaintiff testified that at one point, she had fluid leaking out of a finger on her left hand, which was causing "unbearable" pain, and her physician sent her to a hand specialist. (TR. 101). At the time of the hearing, Plaintiff explained that the finger was healed and that she would have to wear a brace on her finger through the end of that week, which would end her treatment. (TR. 101). Plaintiff stated that her hands "just hurt," but that she could clean and crochet, but sometimes such activities "really hurt[] [her] fingers," which required her to take breaks. (TR. 99, 104).

### C. The ALJ's Evaluation of Plaintiff's Subjective Allegations

In formulating the RFC, the ALJ stated that he had considered Plaintiff's symptoms and the consistency of her subjective allegations with other evidence of record. (TR. 25). The ALJ then: (1) set forth the two-step framework under SSR 16-3p; (2) summarized Plaintiff's testimony, including her reports of difficulty with walking and using her hands and stated:

> The evidence establishes medically determinable impairments that reasonably give rise to symptoms and limitations of the nature alleged by the claimant. However, the record fails to support limitations of such severity as would preclude work activity within the range of light exertion as assigned.

(TR. 26). The ALJ then summarized the objective medical evidence of record, including:

- Plaintiff's history of rheumatoid arthritis, fibromyalgia, and osteoarthritis;

- Plaintiff's treatment with Rinvoq and Plaquenil, which she was tolerating well;

- Plaintiff's severe osteoarthritis in her both hands;

- A report of normal gait with no clubbing, cyanosis, or edema of the extremities;

- A report of trochanter tenderness, right lateral hip tenderness, and bilateral sacroiliac tenderness;

- A report that Plaintiff exhibited 18 out of 18 tender points in joint tenderness, consistent with her fibromyalgia;

- A report of Plaintiff suffering moderate median nerve compression on her right side;

- A lumbar x-ray which revealed Plaintiff suffered from mild anterior L2-L5 endplate spurring;

- A report reflecting normal motor strength in upper and lower extremities;

- a report showing no synovitis or tenderness in her elbows or writs, with normal range of motion bilaterally; and

- An October 2022 report which documented "5/5" motor strength in the upper and lower extremities with no edema and normal sensation; reports of pain with flexion and extension of the back with lumbar paraspinal tenderness; and Plaintiff's ability to walk, unassisted, even though she used a cane at times for stability.

(TR. 26-27).

In her review of the medical evidence, the ALJ stated that she:

- "considered the claimant's complaints of pain from carpal tunnel syndrome and her bilateral osteoarthritis, but found no evidence that the claimant [wa]s unable to engage in frequent reaching, handling, and fingering;"

- considered Plaintiff's musculoskeletal, autoimmune, and nerve disorders resulting in joint pain, tenderness, and fatigue, and "appropriately limited the claimant to a light residual functional capacity;" and

- relied on the October 2022 report in reaching the conclusion that Plaintiff maintained the ability to perform work at a "light" residual functional capacity.

(TR. 27, 28).

Following the review of the medical evidence, the ALJ stated:

[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 28). By means of explanation, then, the ALJ discussed Plaintiff's reports of being able to: dress herself; get in and out of bed; lift a full cup or glass to her mouth; walk outdoors on flat ground; wash and dry her body without difficulty; knit; exercise; sweep and mop; walk the dog; crochet; draw; and grocery shop. (TR. 28). In discussing the activities, the ALJ stated: "Although [Plaintiff] reported she has to take breaks with some of these activities, the claimant's ability to participate in such activities is inconsistent with the claimant's allegations of disabling functional limitations." (TR. 28).

The ALJ then discussed the effectiveness of Plaintiff's medications, finding:

> Although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. In April 2021, the claimant reported when her pain was present, she received relief with over-the-counter medications and heat. She rated her pain 0/10. At this time, she was using a combination of Rinvoq and Plaquenil, which she stated was effective. She continued to report overall improvement with Rinvoq. In February 2022, she again reported her combination of Rinvoq and Plaquenil had been overall effective, and melatonin was effective with her sleep problems. Interestingly, the claimant reported that every month or so, she has episodes of joint pain, that resolve fairly quickly. Therefore, based on her description of pain to her medical providers, the claimant's overall symptoms appear to be well-managed with her medication regimen.

(TR. 28-29) (internal citations omitted).

Finally, the ALJ noted Dr. Martin Bautista's observations at an October 2022 appointment wherein he noted that Plaintiff used a cane for stability, but was able to walk unassisted. (TR. 29). The ALJ summarized her findings regarding Plaintiff's subjective allegations by stating:

> The undersigned determined that the claimant's symptoms have no substantial effect on her ability to work beyond the functional limitations and restrictions indicated by the medical evidence. The claimant's allegations, including her testimony, were not supported by and were inconsistent with the medical evidence. Therefore, the undersigned found that her exertional and nonexertional capabilities are compromised, but not to the degree alleged. Given the objective medical evidence in the record, the undersigned finds the claimant's residual functional capacity is reasonable, and the claimant could function within those limitations without experiencing significant exacerbation of her symptoms.

(TR. 30).

### C. No Error in The ALJ's Evaluation of Plaintiff's Subjective Allegations

Plaintiff appears to challenge the ALJ's subjective allegations evaluation in three ways. The Court rejects Plaintiff's arguments.

First, Plaintiff alleges a "lack of explanation concerning Plaintiff's activities." (ECF No. 14:11). Plaintiff acknowledges the ALJ's report of Plaintiff's ability to perform daily activities with breaks, but Plaintiff insists that this qualifier (taking breaks) fails to "meaningfully address" evidence that: (1) Plaintiff's ability to walk "fluctuated over the course of the relevant period;" (2) she experienced increased pain with sweeping and mopping; and (3) she experienced a single episode of dizziness while walking her dog. (ECF No. 14:10-11). But the Tenth Circuit has long held that "[while] [t]he record must demonstrate that the ALJ considered all of the evidence, [ ] an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted). Here, the ALJ stated that she considered the entirety of the evidence, *see* TR. 19, and the Court should take the ALJ "at [her] word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (alteration added). Additionally, however, the record reflects that the ALJ adequately addressed Plaintiff's difficulty with walking, and increased pain with some activity. *See supra*. Plaintiff's reliance on specific records is nothing more than an attempt to have the Court re-weigh the evidence, which it cannot do. *See Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments,] Mr. Alarid is asking us to reweigh the evidence, which we cannot do.").

Second, Plaintiff takes issue with the ALJ's "evaluat[ion] [of] the efficacy of Plaintiff's treatment," stating that the ALJ "over-relied upon the terms of 'overall improvement' and 'overall effective' when discussing Plaintiff's use of medication. (ECF No. 14:11). For example, Plaintiff points to a treatment note which the ALJ cited in support of her finding that Plaintiff "continued to report as overall improvement with Rinvoq," noting that the same treatment note contained examination findings that showed Plaintiff suffering from hand tenderness and swelling and that she reported that this pain interfered with daily tasks and was relieved by rest. (ECF No. 14:11-12). According to Plaintiff, "the efficacy of her treatment only shows that that she is able to rest with some level of comfort. It does not show that she can perform full-time work in a work setting or contradict Plaintiff's subjective reports of symptoms with activity." (ECF No. 14:12). Again, the Court finds that the ALJ adequately discussed Plaintiff's issues with her hands and need for rest or breaks to accommodate pain. *See supra*. The Court will not re-weigh the evidence to reach a contrary finding. *See supra*.

Finally, Plaintiff attacks the ALJ's evaluation of the objective evidence, citing to "CDAI score, a Vectra score, and observation of tenderness and swelling." (ECF No. 14:12). But Plaintiff fails to explain the significance of these findings, and instead states only that the evidence the ALJ did rely on does "not meaningfully condemn Plaintiff's report of subjective report of symptoms showing symptoms worse with activity and better with rest." (ECF No. 14:12). The Court disagrees. As discussed, the ALJ: accurately reported Plaintiff's testimony, including reports of pain; reviewed the objective medical evidence of record, including treatment and the efficacy thereof; and examined Plaintiff's daily activities. *See supra*. In doing so, the ALJ provided specific reasons for the weight

given to Plaintiff's allegations, which were consistent with and supported by the evidence. As such, the Court affirms the Commissioner's decision.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on July 18, 2025.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE